**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD M. WESSELT,<br>*Plaintiff,*<br>v.<br>FRANKIE T. BASILE and KIMBERLY BASILE,<br>*Defendants.* | CIVIL ACTION<br>NO. 26-6102 |

**Pappert, J.** **September 25, 2026**

**MEMORANDUM**

Richard Wesselt advised his clients and longtime friends, Frankie and Kimberly Basile, that traditional investments such as stocks, bonds, mutual funds and real estate were too risky and produced too little return to achieve their financial planning goals. He recommended instead that they use their savings to purchase whole life insurance policies, funding them to the maximum allowable limit. The Basiles realized in early 2023 that Wesselt and others working with him had, unbeknownst to the Basiles, allegedly taken out numerous loans using the policies' cash value as collateral, which they then used to purchase more policies, earning substantial commissions along the way. The Basiles sued Wesselt, his companies and others involved in this alleged scheme in the Montgomery County Court of Common Pleas. They accuse the defendants of, among other things, forging their signatures on the loan agreements.

Wesselt filed this lawsuit claiming the Basiles submitted declarations in the Montgomery County case falsely denying that they had signed various insurance policy documents, asserting instead that their purported signatures had been either copied or

forged. Wesselt contends that their "perjured declarations" constitute an abuse of process.

The Basiles move to dismiss Wesselt's Complaint, and the Court grants the motion. A litigation adversary's alleged "lying" under oath does not, *ipso facto*, constitute an abuse of process tort, and Wesselt fails to allege that the Basiles falsified their declarations primarily to accomplish a purpose for which the legal process was not designed.

I

Richard Wesselt and Frankie and Kimberly Basile had been close friends for decades. (Underlying Compl. ¶ 45, Dkt. No. 1-3, Exhibit B.) In 2003, the Basiles engaged Wesselt as a financial planner, investment advisor, wealth manager and insurance broker. (*Id.*) Wesselt advised them to "prioritize the cash value growth of whole life insurance policies by funding the policies to the maximum allowable limits." (*Id.* ¶ 54.) Purportedly on their behalf, Wesselt purchased numerous additional life insurance policies by taking out loans against the cash value of the Basiles' existing policies. (*Id.* ¶¶ 4–6.) The Basiles came to realize they had paid millions in premiums on the policies and that Wesselt's investment strategy was "financially inappropriate" for them but very lucrative for Wesselt, who received substantial commissions. (*Id.* ¶¶ 10–12.) In April 2024, the Basiles sued Wesselt, his corporation and associates in state court seeking to recover financial losses for, among other things, breach of fiduciary duty, common law fraud, negligent misrepresentation, fraudulent concealment and breach of contract. (*Id.* ¶¶ 83–138.)

With the Basiles' lawsuit ongoing, Wesselt filed this separate abuse of process claim in Montgomery County, (Dkt. No. 1-3), which the Basiles removed to federal court, (Dkt. No. 1). Wesselt accuses the Basiles of submitting allegedly false declarations in an effort to win their motions for summary judgment and defeat his own. (Compl. ¶¶ 47–48, 61–63.) The Basiles' declarations assert that, "[t]o the best of [their] knowledge and recollection," the signatures appearing on multiple documents were "a photocopy or other copy of [their] signature." (Exhibit A, Dkt. No. 1-3, at 22–32.) Both declare "someone at Wesselt Capital Group signed on [their] behalf or photocopied [their] signature." (Compl. ¶ 5.) Wesselt also alleges that doing so perverted the litigation and, if successful, would cause him to pay the loans he says the Basiles agreed to take out against their insurance policies. (*Id.* ¶¶ 55, 63.) He alleges he was harmed by "having to endure litigation, attorney's fees, expert reports" and in having to "defend his name and reputation. (*Id.* ¶ 66.)

II

The Court assesses the sufficiency of a pleading before discovery under Federal Civil Rules 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying her claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009);

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129–30 (3d Cir. 2010). The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2.

Generally, courts only consider the allegations contained in the complaint as well as "exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted); *see also In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("A document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). A court may take judicial notice of another court's opinion when evaluating a motion to dismiss, "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to

reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

III

A

Under Pennsylvania law, the "gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (quoting *McGee v. Feege,* 535 A.2d 1020, 1023 (Pa. 1987)). In analyzing abuse of process claims, courts should ask "whether a legal process has been used 'as a tactical weapon to coerce a desired result that is not the legitimate object of the process.'" *Id.* at 307 (quoting *McGee*, 535 A.2d at 1026). The plaintiff must plausibly allege the defendant (1) used a legal process against the plaintiff (2) primarily to accomplish a purpose for which the process was not designed and (3) caused harm to the plaintiff. *Polysciences, Inc. v. Masrud*, No. 22-1767, 2023 WL 3377084, at *1 (3d Cir. May 11, 2023) (quoting *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)).

Pennsylvania courts have interpreted "legal process" broadly to "encompasses the entire range of procedures incident to the litigation process." *Rosen v. Am. Bank*, 627 A.2d 190, 192 (Pa. Super. Ct. 1998) (citations omitted); *Shiner v. Moriarty*, 706 A.2d 1228, 1237 (Pa. Super. Ct. 1998).

As for the second element, "[t]he significance of the word 'primarily' is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Rosen*, 627 A.2d at 192 (quoting Restatement (Second) of Torts, § 682,

comment b.). While a "collateral advantage" or "extortion outside of the underlying litigation is not the only type of abuse of process case," an abuse of process claim requires "the misuse of process, no matter how properly obtained, for *any purpose* other than that which it was designed to accomplish." *Gen. Refractories*, 337 F.3d at 305–06 (quoting Restatement, § 682, cmt. b). It is only "when the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function" can be "legal process be considered to have been perverted." *Id.* at 308 (internal citation and quotation omitted).

B

First of all, to permit a cause of action for abuse of process every time a party believed their opponent was lying to win their case "would wreak havoc with the judicial system." *Rosen*, 627 A.2d at 194. While conduct during litigation can constitute abuse of process, that conduct must be "severe." *Gen. Refractories*, 337 F.3d at 308. In *General Refractories*, Fireman's Fund and its attorneys were sanctioned in the underlying state court action for engaging in "a clear pattern of delay, stonewalling, deception, obfuscation and pretense;" intentionally withholding and hiding documents; ignoring court orders; and allowing false testimony at depositions and misrepresentations to the court and opposing party. *Id.* at 301. The Third Circuit Court of Appeals, while affirming the dismissal of the abuse of process claim based on that conduct, held that the district court nonetheless abused its discretion in not allowing General Refractories to amend its complaint because the district court had interpreted the claim too narrowly. *Id.* at 304, 311. *See also McGee*, 535 A.2d at 1020–22 (allowing an abuse of process claim to go forward where defendant filed over ten

petitions and motions despite the court's order granting a petition to enforce judgment); *Shiner*, 706 A.2d at 1236 (determining that "[p]ursuing litigation primarily to harass and cause injury to the adverse party is an objective not authorized . . . and constitutes a sufficient perversion" of process).

Wesselt contends the Basiles submitted false declarations for the specific purpose of defeating his summary judgment motion and winning their own motions, which would allegedly have the effect of making Wesselt "pay loans" taken out against certain of the Basiles' insurance policies that were then used, at least according to the Basiles, to buy more policies.[1] (Compl. ¶¶ 62–63.) But submitting declarations to obtain or defeat summary judgment to win a case, even if accompanied by an ill motive, is an intended objective of the legal process, not something done primarily to harass and directly injure an adversary. *See Gen Refractories*, 337 F.3d at 309 (noting that "[a]llowing a party to use the process in order to succeed in the litigation is an end contemplated by most legal processes, and, certainly, that goal does not pervert 'discovery and litigation process'"). *See also Morgan v. Noss*, No. 2:22-CV-01631, 2024 WL 2819139, at *2 (W.D. Pa. Apr. 4, 2024), *report and recommendation adopted as modified*, No. CV 22-1631, 2024 WL 2816500 (W.D. Pa. June 3, 2024) (report recommending dismissal with prejudice of an abuse of process counterclaim, noting that the assertion that the opposing party's "allegations and claims are wrong, or even false,

[1] The state court denied all parties' summary judgment motions on August 12, 2026, roughly three weeks after Wesselt filed this lawsuit. *See* Orders, *Brasile v. Wesselt*, No. 2024-08501 (Ct. Comm. Pl. Mont. Co. Aug. 12, 2026), Dkt. 85–88; (Exhibit 4, Dkt. Nos. 11-3, 11-4, 11-5, 11-6.) In addition, Wesselt acknowledged that the Basiles "surrendered the policies in a settlement with the insurance companies." (Pl.'s Resp. in Opp'n to Defs' Mot. to Dismiss, at 5–6, Dkt. No. 14.) (citing the Basile's motion stating that, "there are no loans against the life insurance policies (because the Basiles no longer hold them)").

does not give rise to a claim for abuse of process"); *Schwartz v. OneWest Bank, FSB*, 614 F. App'x 80, 84 (3d Cir. 2015) (finding no abuse of process where, "even if the [underlying] action was based on incorrect facts, the allegations in the [complaint] do not demonstrate that the process was pursued to achieve an unauthorized purpose"); *Saterstad v. Lock*, No. 337 MDA 2016, 2017 WL 564822, at *3 (Pa. Super. Ct. Feb. 13, 2017) ("The signing of the affidavit was for the intended purpose of the process; therefore, the trial court properly sustained [defendant's] preliminary objection to the abuse of process claim."); *Shaffer v. Steward*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984) (stating that a defendant is not liable where they have "done nothing more than carry out the process to its authorized conclusion, even" if they did so with bad intentions (citations omitted)); *EMC Outdoor, LLC v. Stuart*, No. 17-5172, 2018 WL 3208155, at *4 (E.D. Pa. June 28, 2018) (discussing that "it is well-settled that the commencement or maintenance of a lawsuit, even for an improper purpose, does not constitute an abuse of process under Pennsylvania law" (citations omitted)).

C

Since Wesselt fails to allege the Basiles' conduct was primarily for a purpose for which the legal process was not designed, the Court needn't address the alleged harm, though "[c]ognizable injury for abuse of process is limited to the harm caused by the misuse of process, and does not include harm . . . resulting from that process's being carried through to its lawful conclusion." *Cash v. U.S. Dep't of Homeland Sec.*, No. 18-CV-2114, 2018 WL 2445678, at *6 (E.D. Pa. May 31, 2018) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994)). "[C]ausing financial and emotional injury to, as well as weakening the resolve of, opposing parties" are possibilities of litigation. *See Gen.*

*Refractories*, 337 F. 3d at 308 (noting that the court of appeals does not "mean to predict that the Supreme Court of Pennsylvania would allow for liability simply because an attorney acts with these possibilities in mind").

IV

A court should freely give leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), unless amendment would be futile or inequitable. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Amendment is futile if no new facts could fix the original complaint's problems. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

Wesselt asks for leave to amend his Complaint should the Court grant the Basiles' motion, claiming his case is "analogous" to *General Refractories*, and that he can cure his pleading's deficiencies. (Pl.'s Resp. at 13.) That is incorrect. The Third Circuit in *General Refractories* held that the district court abused its discretion in denying leave to amend because it construed the abuse of process tort too narrowly. 337 F.3d at 304. Specifically, the district court interpreted Pennsylvania law to require a plaintiff to show that the legal process was used primarily to achieve a purpose unconnected, or collateral, to the litigation, not whether the process had been used to obtain a result that was "not the legitimate object of the process." *Id.* at 305–07. Here, the Court has defined the primary purpose requirement in the manner *General Refractories* prescribes and Wesselt cannot allege facts to show that the Basiles submitted the declarations primarily to accomplish a purpose for which the legal process was not designed.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.